UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-27-P-S |
| | ) | |
| NICHOLAS RICHARD, | ) | |
| | ) | |
| Defendant | ) | |

*MEMORANDUM DECISION ON MOTION FOR FRANKS HEARING
AND RECOMMENDED DECISION ON MOTION TO SUPPRESS*

Nicholas Richard, charged with one count of knowing distribution of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and twenty-six counts of knowing possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B), seeks to suppress evidence seized pursuant to a search warrant issued on July 1, 2004 by the Maine District Court. *See* Indictment (Docket No. 18); Motion To Suppress, etc. ("Motion") (Docket No. 24) at 1-2. Incident thereto, Richard seeks an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). *See* Supplement to Defendant's Motion To Suppress and Request for Franks Hearing, etc. ("Reply") (Docket No. 30) at [5]-[7].[1] For the reasons that follow, I deny his request for a hearing and recommend that his motion to suppress be denied.

**I. Factual Backdrop**

On July 1, 2004 Lewiston Police Department ("LPD") Detective Scot A. Bradeen sought a

---

[1] Richard did not request a *Franks* hearing or submit evidence in support thereof until he filed his reply memorandum. *Compare* Motion *with* Reply. On June 14, 2005 I held a teleconference with counsel in which counsel for the government confirmed that, notwithstanding the fact that the defendant submitted additional exhibits with his reply memorandum, the government did not seek an opportunity to further brief its position. *See* Docket No. 31 (minute entry for proceedings held before Judge David M. Cohen on June (*continued on next page*)

1

warrant from the Maine District Court to search Richard's home, storage area and computer systems for evidence of the crimes of sexual exploitation of a minor (17 M.R.S.A. § 2922), dissemination of sexually explicit materials (17 M.R.S.A. § 2923) and possession of sexually explicit materials (17 M.R.S.A. § 2923). *See* Affidavit and Request for a Search Warrant ("Bradeen Affidavit"), Exh. A to Motion, at [1], [5]. Bradeen's affidavit in support of the warrant noted that in addition to being an LPD detective, Bradeen was a detective with the Maine Department of Attorney General, was assigned to the Maine Computer Crimes Task Force and had been a law-enforcement officer for approximately thirteen years. *Id*. at [2], ¶ 1. The affidavit stated, *inter alia*, that:

  1. On June 30, 2004 LPD Detective Randy St. Laurent began an investigation into a report of multiple gross sexual assaults on a named minor, hereinafter referred to as "Jane," an alias I have selected to conceal her identity.[2] *Id*. at [2]-[3], ¶ 2. Jane disclosed to St. Laurent that James and Stacie Fisk of 85 Horton Street, Apartment 10, Lewiston, had given her a compact disc labeled "vids" that contained videos of sexual acts with children under 14 years of age. *Id*. at [3], ¶ 2. Jane's mother, who was in possession of the disc, provided it to St. Laurent, who viewed it and noted that it contained images of children engaging in sexual acts with adults. *Id*.

  2. St. Laurent contacted Bradeen and requested his assistance in the investigation. *Id*. at [3], ¶ 3. Bradeen viewed the digital videos and agreed with St. Laurent that they constituted child pornography in violation of 17 M.R.S.A. §§ 2923 and 2924. (An example of the video images was attached to the affidavit.)

  3. Bradeen interviewed Jane, who positively identified the compact disc as that given to

---

14, 2005).

[2] Pursuant to Judge Singal's order, the Motion and the attached Bradeen Affidavit have been sealed to safeguard the identity of the minor. (Docket No. 26.) The government's response and the defendant's reply have also been filed under seal. Because I refer (*continued on next page*)

her by James and Stacie Fisk. *Id*. at [3], ¶ 4. Jane said that the Fisks had told her they received the disc from "Nick." She said she knew Nick but did not know his last name. She told Bradeen that Nick was about 27 years old, lived on Howe Street in Lewiston and owned two vehicles, a "beat up" black car with a yellow bumper and a large brown van. *Id*.

4. On July 1, 2004 Bradeen obtained a warrant to search the Fisk residence and vehicle for a computer and any and all related media. *Id*. at [3], ¶ 5. After completing the search, Bradeen interviewed James Fisk in the parking lot outside of his apartment building. *Id*. He asked Fisk about the compact disc that Jane had given St. Laurent and how Fisk had come into possession of it. *Id*. Fisk stated that "Nick" had given him the disc. *Id*. He said that he did not know Nick's last name or where he lived but that Angela at 85 Horton Street, Apartment 3, Lewiston, would know. *Id*. Fisk gave a description of Nick's vehicles identical to that given by Jane and added that both were Chevrolets. *Id*.

5. Bradeen spoke with Angela, whom he identified as Angela Holmes. *Id*. at [3], ¶ 6. Holmes said that she did not know Nick's last name but did know that he lived on Howe Street in Lewiston somewhere between Pine and Sabattus streets. *Id*. She, too, gave a description of Nick's vehicles identical to that of Jane. *Id*.

6. Bradeen asked Detective Brian O'Malley to check the area of Howe Street between Pine and Sabattus streets for the described vehicles. *Id*. at [3], ¶ 7. O'Malley advised Bradeen that he found a black Chevy Lumina with some yellow coloration parked at 20 Howe Street. *Id*. O'Malley requested a registration check of the vehicle and learned that it was registered to Nicholas Richard, date of birth October 22, 1978, of 799 Sopers Mill Road, Auburn. *Id*.

---

herein to the minor simply by the alias I have assigned her, I see no need to seal this decision.

7.     Bradeen went to 20 Howe Street, where, parked at the rear of the building, he saw a black Chevy conversion van as well as the black Lumina listed to Nicholas Richard that had been earlier spotted by O'Malley. *Id*. at [4], ¶ 8. The van was listed to Michael Richard of the Sopers Mill Road, Auburn, address. *Id*. Bradeen checked the building's mailboxes, finding the name "Nick Richard" affixed to the mailbox for Apartment 2. *Id*.

8.     On the same day (July 1, 2004) O'Malley spoke with Richard Haskell, landlord of 20 Howe Street. *Id*. at [4], ¶ 9. Haskell told O'Malley that Nicholas Richard lived in Apartment 2 with Marie Cote. *Id*. Haskell also said that he had seen at least two computers in the apartment and boxes of computer-related items in Richard's storage area in the building's basement. *Id*.

9.     Bradeen believed, from his training, knowledge and experience, that copies of the files on the compact disc provided by Jane as well as other forms of sexually explicit child pornography would still be resident on Richard's computer. *Id*. at [4], ¶ 10. In his experience, persons who possess or disseminate such materials will collect such images and keep them for many years. *Id*.

10.    Based on Bradeen's training, knowledge and experience and the facts recited earlier in the affidavit, he knew (and stated in the affidavit) that "[c]omputers are often used to create, store, possess, transport and disseminate child pornography, or sexually explicit images of children." *Id*. at [4]. In addition, he stated that "[c]omputers are also commonly used by those who collect and trade child pornography to communicate with others who collect, trade and sell child pornography, often anonymously or using an assumed name." *Id*. "The sexually explicit images themselves can be sent and received via the Internet, through web sites, electronic mail or other electronic communications involving computers." *Id*.

Bradeen added:

Based on these facts, as well as my training, experience, knowledge and study, I

4

> believe that computers and other electronic magnetic storage media located at 20 Howe St., Apartment 2, have been used to possess, receive and distribute sexually explicit images of persons less than 18 years of age, all in violation of 17 M.R.S.A. § 2923 and § 2924. I believe this because a pattern of behavior has been established indicating that Richard's continued use of computers to view child pornography via the Internet or on removable media [sic]. As the computer has been connected to the Internet, it is my belief that the computer is likely being used to continue this pattern, as it is used to connect to the Internet. It is also a private place where he/she could view child pornography on disks that may not have originated from the Internet.

*Id.* at [5].

Maine District Court Judge John D. McElwee granted the application for the search warrant, and a search was conducted pursuant to it the same day (July 1, 2004). *See* Motion at 2, ¶ 1; Government's Memorandum of Law in Opposition to Defendant's Pretrial Motion To Suppress ("Opposition") (Docket No. 29) at 6.

## II. Discussion

As a threshold matter, Richard contends that the search warrant was invalid inasmuch as the Bradeen Affidavit failed to demonstrate probable cause that he had committed a crime. *See* Motion at 4-5. As he acknowledges, *see* Motion at 1; Reply at [5], this is not the end of the matter: Evidence seized in reliance on an invalid search warrant may yet be admissible pursuant to the so-called *Leon* good-faith exception, *see United States v. Leon*, 468 U.S. 897, 922-25 (1984). However, Richard contends that the government's bid for a *Leon* exception is unavailing inasmuch as the Bradeen Affidavit (i) was so deficient of probable cause that no reasonable official could have believed in its validity and (ii) was intentionally or recklessly false – a proposition he proposes to establish via a *Franks* evidentiary hearing. *See* Reply at [5]. The government rejoins that the Bradeen Affidavit established probable cause for the search and seizure and, in any event, the *Leon* exception applies, Richard having failed to raise any material issue warranting a *Franks* hearing. *See* Opposition at 10-

18. The government has the better of the argument.[3]

### A. Probable Cause for Warrant

"Probable cause exists when the affidavit upon which a warrant is founded demonstrates in some trustworthy fashion the likelihood that an offense has been committed and that there is sound reason to believe that a particular search will turn up evidence of it." *United States v. Schaefer*, 87 F.3d 562, 565 (1st Cir. 1996) (citation and internal quotation marks omitted). Both the issuing magistrate and a subsequent reviewing court look to "the totality of the circumstances indicated [within the four corners of] a supporting affidavit" to assess the existence *vel non* of probable cause. *Id.*; *see also, e.g., Vega-Figueroa*, 234 F.3d at 755. "Yet such review cannot start from scratch. A magistrate's determination of probable cause should be paid great deference by reviewing courts." *Schaefer*, 87 F.3d at 565 (citation and internal quotation marks omitted).

In Richard's view, the Bradeen Affidavit fails, within its four corners, to establish probable cause inasmuch as:

1. It relied essentially on a single source of information, James Fisk, without enlightening Judge McElwee as to Fisk's identity or reliability or providing details concerning the disc transaction (such as when it allegedly took place and under what circumstances or whether Richard had knowledge of the disc's contents). *See* Motion at 4.

2. Despite Bradeen's unsupported claim of an "established pattern of behavior" involving Richard, nothing in the affidavit creates any sort of nexus between Richard's computers and the production or distribution of illegal materials. *See id.* at 5.

---

[3] The government describes in some detail the items seized pursuant to the contested warrant. *See* Opposition at 5. Richard protests – and I agree – that this information has no bearing on the instant analysis. *See* Reply at [4]; *see also, e.g., United States v. Vega-Figueroa*, 234 F.3d 744, 755 (1st Cir. 2000) (validity of a warrant is assessed with reference to "information provided in the four
(*continued on next page*)

I first address Richard's argument concerning the unproven reliability of Bradeen's assertedly sole source. As the First Circuit has observed, an affiant need not necessarily assess (or otherwise vouch for) the credibility of informants to demonstrate probable cause for issuance of a warrant. *See, e.g., Schaefer*, 87 F.3d at 566 ("[A]n informant's tales need not invariably be buttressed by extensive encomia to his veracity or detailed discussions of the source of his knowledge. While an informant's truthfulness and basis of knowledge are highly relevant in determining the value of his report, the [Supreme] Court has cautioned that these elements should [not] be understood as entirely separate and independent requirements to be rigidly exacted in every case.") (citation and internal quotation marks omitted); *see also, e.g., United States v. Spinosa*, 982 F.2d 620, 626 (1st Cir. 1992) ("The affidavit must be viewed in its entirety, and must be given a common-sense and realistic, rather than a hypertechnical interpretation.") (citations and internal quotation marks omitted).

Informants' credibility can be established in multiple ways, including:

1. Consistency among independent reports. *See, e.g., Schaefer*, 87 F.3d at 566 ("Courts often have held that consistency between the reports of two independent informants helps to validate both accounts.").

2. Declarations against penal interest. *See, e.g., id*. ("The fact that an informant's statements are against his or her penal interest adds credibility to the informant's report.").

3. Consistency with information provided by "ordinary citizens" (such as complaints by neighbors that an individual was cultivating marijuana) – a type of report that enjoys "special stature since information provided by ordinary citizens has particular value in the probable cause equation." *Id*.

---

corners of the affidavit supporting the warrant application") (citation and internal quotation marks omitted).

4.  Corroboration by external data. *See, e.g., id*. at 567 ("The record contains several external data (i) confirming the identities and predilections of Crawford, Spellman, and other growers in the group, (ii) pinning down Crawford's and Spellman's involvement with cannabis cultivation, and (iii) demonstrating the group's access to marijuana plants that were being grown indoors.") (footnote omitted).

5.  Self-authentication "through the very specificity and detail with which [an affidavit] relates the informant's first-hand description of the place to be searched[.]" *United States v. Zayas-Diaz*, 95 F.3d 105, 111 (1st Cir. 1996).

As the government points out, *see* Opposition at 11-12, Richard minimizes the import of the fact that the Bradeen Affidavit conveyed that the LPD initially learned of Richard's alleged dissemination of the compact disc to the Fisks not from James Fisk but from Jane, a 14-year-old sexual-assault victim. According to the affidavit, only then did Bradeen pointedly ask James Fisk how he obtained the compact disc. Fisk told a story identical in all material respects to that of Jane. In so doing, Fisk provided some details that were borne out on further investigation, including the description of Richard's vehicles and the fact that another individual, Angela, would know where Richard lived. What is more, Fisk's corroboration of Jane's story can be classified as a declaration against penal interest. The Bradeen Affidavit made clear that (i) the disc contained images of children engaging in sex with adults, (ii) Fisk spoke with Bradeen on the heels of a search of the Fisks' apartment pursuant to a search warrant, and (iii) Fisk in essence admitted that he had given the disc allegedly obtained from "Nick" to Jane (whom he surely knew to be a minor).

While, as Richard notes, the corroboration consisted of "Fisk corroborating Fisk" in the sense that Jane's information originally came from Fisk, *see* Reply at [2], the circumstances weigh in favor of the reliability of the tip that "Nick" was the source of the disc. Inasmuch as appears, (i) Fisk had no

8

reason to lie to Jane when he originally imparted this information, (ii) Jane had no motive to deceive Bradeen in relaying it, and (iii) Fisk seemingly did not help himself by confirming it when confronted by a law-enforcement officer following a search of his home pursuant to a warrant. The information provided was sufficient to establish a "fair probability" that Richard was the source of the disc. *See, e.g., United States v. Crosby*, 106 F. Supp.2d 53, 55 (D. Me. 2000), *aff'd*, 24 Fed. Appx. 7 (1st Cir. 2001) ("[T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place.") (citation and internal punctuation omitted).

While, as Richard observes, *see* Motion at 4, nothing in the Bradeen Affidavit spoke to the question whether Richard was familiar with the contents of the disc, in view of its graphic contents Judge McElwee could have drawn a reasonable inference that Richard would not have provided it to a third party (such as the Fisks) ignorantly. *See United States v. Sawyer*, 144 F.3d 191, 193 (1st Cir. 1998) ("A reviewing court must give great deference to a magistrate's assessment of the facts and inferences supporting the affidavit, . . . reversing only if there is no substantial basis for concluding that probable cause existed.") (citation and internal punctuation omitted).

I turn next to Richard's argument that nothing in the Bradeen Affidavit suffices to establish a nexus between his computers and the production or distribution of illegal materials. *See* Motion at 5. As Richard points out, *see id.*, although Bradeen stated in the affidavit that he believed Richard's computers had been used to possess, receive and distribute sexually explicit images of minors "because a pattern of behavior has been established indicating . . . Richard's continued use of computers to view child pornography via the Internet or on removable media[,]" Bradeen Affidavit at [5], the affidavit is barren of any factual basis to conclude that such a "pattern" on Richard's part

9

existed. The government offers no justification or explanation for Bradeen's puzzling "pattern" language, *see generally* Opposition, which I suspect is irrelevant boilerplate mistakenly imported into the document.[4] Nonetheless, the presence of the "pattern" language is not fatal to a finding of probable cause. Wholly apart from the "pattern" assertion, the Bradeen Affidavit indicated that (i) Jane possessed a disc that depicted minors engaged in sexual activity with adults, (ii) there was a fair probability that Richard was the source of the disc, (iii) per Bradeen's training and experience, persons who possess or disseminate child pornography will collect such images and keep them for many years, (iv) Richard had computers, and (v) per Bradeen's training and experience, computers often are used to create, store, possess, transport and disseminate child pornography. This sufficed to show the requisite nexus.

For the foregoing reasons, I conclude that the warrant in question was buttressed by probable cause.

### B. *Leon* Good-Faith Exception; *Franks* Hearing Request

My finding that the warrant to search Richard's apartment and storage area was supported by probable cause is dispositive of his motion to suppress. However, even assuming *arguendo* that I were to find probable cause to have been lacking, I would reach the same result based on the so-called *Leon* good-faith exception. Pursuant to this doctrine, "[e]vidence seized in violation of the Fourth Amendment is admissible in court if the government placed an objectively reasonable reliance on a neutral and detached magistrate judge's incorrect probable cause determination." *Crosby,* 106 F. Supp.2d at 58 (citation and internal quotation marks omitted). The *Leon* exception is itself subject to

---

[4] As the First Circuit has observed, "affidavits for search warrants are normally drafted by nonlawyers in the midst and haste of a criminal investigation. In the unstructured progress of such an investigation, grammatical lapses . . . do occur on occasion." *United States v. Cochrane*, 896 F.2d 635, 638 (1st Cir. 1990) (citations and internal quotation marks omitted).

exceptions:

> There are four exclusions to the *Leon* good-faith exception: (1) when the magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; (3) where the affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where a warrant is so facially deficient – i.e. in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid.

*United States v. Owens*, 167 F.3d 739, 745 (1st Cir. 1999) (citation and internal punctuation omitted). Richard invokes the first and third of these exclusions. *See* Motion at 1-2; Reply at [5]. I readily conclude that the third – that the Bradeen Affidavit was so lacking in indicia of probable cause as to render belief in its existence unreasonable – is inapplicable. As discussed above, Richard's characterization of the Bradeen Affidavit as relying solely on one uncorroborated source is not entirely fair. The manner in which the tip came to the attention of the LPD and in which the LPD then sought to corroborate it bolstered its apparent reliability. The LPD undertook a reasonable investigation to establish that the defendant, Nicholas Richard, was the "Nick" of whom Jane and Fisk spoke and that he possessed computers, which Bradeen knew from his experience and training are used to retrieve, store and disseminate images such as those found on the disc given to Jane and on which it was likely "Nick" would have collected and kept such images. Thus, even to the extent probable cause was lacking, a reasonable official could have believed it to have been present.

Richard's invocation of the first *Leon* exclusion, which is intertwined with his request for a *Franks* hearing, is grounded on his assertion that Bradeen intentionally or recklessly omitted material information from his affidavit. *See* Motion at 2; Reply at [5]. In *Franks* the Supreme Court held: "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant

11

affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks*, 438 U.S. at 155-56. A misstatement or omission must be material:"[I]f, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id*. at 171-72 (footnote omitted); *see also, e.g., United States v. Ippolito*, 774 F.2d 1482, 1486-87 & n.1 (9th Cir. 1985) (if a reasonable district judge could have denied the application if fully informed, the information is material; however, if omitted information or misstatement would have had no effect on issuance of warrant, it is immaterial).

In his initial motion, Richard asserted that Bradeen deliberately omitted certain material information from his affidavit, to wit:

1.    That the Fisks were the subjects of an investigation concerning gross sexual assaults against Jane and had been arrested and charged with serious crimes. *See* Motion at 5. In Richard's view, this omitted information bore negatively on the credibility of the Fisks, who "would have had incentive to make statements to the police implicating other persons in crimes and shifting blame from themselves." *Id*.

2.    That Richard was engaged professionally in computer repairs. *See id*. at 6. Richard posits that had this fact been included, it "would have undercut the inference the Affiant was attempting to sell to the magistrate, that the equipment was probably being used for illicit activities involving child pornography." *Id*.

Richard neglected, in his motion, to provide any evidence of the truth of the foregoing assertions, *see generally* Motion; however, after being put on notice by the government's opposing memorandum that such a showing must be made to warrant a *Franks* evidentiary hearing, *see*

12

Opposition at 8-10; *see also, e.g., United States v. Santana*, 342 F.3d 60, 66 (1st Cir. 2003); *United States v. Hadfield*, 918 F.2d 987, 992 (1st Cir. 1990), he filed with his reply memorandum copies of search-warrant materials and police reports created in connection with the LPD's investigation of the Fisks, *see* Exhs. B & C to Reply.[5]

Richard's LPD materials, together with a new affidavit of Bradeen submitted by the government, *see* [Affidavit of Scot Bradeen] ("Second Bradeen Aff."), attached to Opposition, establish that Bradeen knew as of the time he applied for the search warrant before Judge McElwee that the Fisks were under investigation for the commission of gross sexual assaults against Jane, that James Fisk had denied having had any sexual contact with her and that James Fisk had been arrested and charged with disseminating sexually explicit material, in violation of 17 M.R.S.A. § 2923(1), in connection with his distribution of the "vids" compact disc to Jane, *see* Second Bradeen Aff. ¶ 3; *see also, e.g.*, LPD Narrative Report dated July 4, 2004 by Bradeen, included in Exh. C to Reply (relating what Bradeen had learned as of July 1, 2004 regarding details of Fisks' alleged sexual assaults on Jane and that as of that date James Fisk denied having had any type of sexual contact with Jane).

As the government argues, although the Bradeen Affidavit did not explicitly state that James Fisk was a subject of the gross sexual assault investigation described in the affidavit, a reasonable inference could have been drawn that he was. *See* Opposition at 12. At the least, it was apparent from the face of the affidavit that Fisk was implicated in criminal activity inasmuch as he had admitted having provided a pornographic compact disc to a minor and his apartment had been searched pursuant to a warrant. In any event, as the government further contends, *see id.* at 15-16, the omissions

---

[5] Richard explained that these materials had not been made available to him, despite several requests, until after he filed his motion to suppress. *See* Reply at [5] n.1. Counsel for the government lodged no objection to this belated proffer and declined an opportunity to submit a surreply, *see* Docket No. 31; hence, I have taken these materials into consideration.

13

were not material. Here, again, the context of the tip is all-important. Fisk did not simply volunteer the information regarding Richard upon being implicated in serious criminal activity – timing that would have cast significant doubt on his credibility. Rather, Jane reported information that Fisk had relayed to her earlier – prior to the time the LPD had any inkling that Fisk might be involved in serious crimes. While Fisk's subsequent corroboration of that information to the LPD certainly harmed Richard's interests, it is difficult to see how it shifted blame from, or otherwise exonerated, Fisk. Finally, although Fisk's denial of his involvement in sexual activity with Jane might have undercut his credibility generally, it would not have seriously undermined the likely veracity of the tip regarding Richard in view of the manner in which that allegation surfaced.

Because Bradeen's omission of information regarding the criminal investigation of the Fisks, even if deliberate, were not materially misleading, Richard falls short of demonstrating entitlement to either a *Franks* hearing or suppression on that basis.

Richard adduces no evidence that Bradeen knowingly omitted from his affidavit the fact that Richard was engaged professionally in computer repairs; to the contrary, the only evidence proffered on this point is Bradeen's recollection that he had no knowledge of this fact at the relevant time. *See* Second Bradeen Aff. ¶ 5. Thus, Richard fails to raise a contested issue meriting a *Franks* hearing with respect to this allegation. *See, e.g., Hadfield*, 918 F.2d at 992. In any event, as the government contends, even assuming *arguendo* that Bradeen did knowingly omit this fact, it would not have made a material difference. *See* Opposition at 16. As the government observes: "If the defendant had a computer repair business, that fact, arguably, could have bolstered the case for the issuance of a warrant because it would permit the inference that the defendant was a sophisticated computer user who could 'burn' copies of discs for dissemination and that his computer was more likely to be connected to the Internet." *Id*. Beyond this, Richard fails to clarify how the fact that one is in the

professional computer-repair business cuts against the generally reasonable inference that computers found in one's home are one's own personal computers.

### III.  Conclusion

For the foregoing reasons, I **DENY** the defendant's motion for a *Franks* hearing and recommend that his motion to suppress evidence be **DENIED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof.  A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 28th day of June, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge